IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISHMAEL A. BURK, | No. 4:21-CV-01354 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SUPERINTENDENT WAKEFIELD, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JUNE 1, 2022

Plaintiff Ishmael A. Burk is currently in state custody. He filed the instant *pro se* Section 1983[1] action in July 2021, claiming constitutional violations by various officials at the State Correctional Institution, Smithfield (SCI Smithfield), located in Huntingdon, Pennsylvania. Presently pending is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant in part and deny in part Defendants' motion.

I.     BACKGROUND

Burk's complaint is brief, but he alleges numerous constitutional violations by prison officials at SCI Smithfield. He first asserts that, on September 10, 2020,

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

defendant Correctional Officers Hann and Cassol removed him from his cell, handcuffed him, and searched his cell.[2] He avers that Hann told him that defendant Mail Supervisor Grassmeyer ordered the search and that, during it, Hann intentionally ripped up some of Burk's legal mail.[3] Burk claims that Hann then uncuffed him and hit him in the face with the handcuffs and told him to stop sending legal mail (which was "[a] message from Grassmeyer").[4]

Burk further alleges that, two days later, Hann, Cassol, and defendant L. Smith returned to his cell, removed and handcuffed him, and searched his cell again.[5] According to Burk, when he asked why his cell was being searched again, Smith spit in his face and tightened his handcuffs.[6] Burk avers that Hann and Cassol then removed and confiscated two boxes of written materials labeled "legal work/mail."[7] Burk states that he asked Smith why he was being harassed, and Smith purportedly replied that it was due to a grievance Burk filed against Grassmeyer, who had also directed the confiscation of Burk's legal materials.[8] Burk additionally alleges that Smith "stomped on" his foot and that, when Burk requested medical treatment for his eye (which he claims was still bleeding from

---

[2]  Doc. 1 at 4.
[3]  *Id.*
[4]  *Id.*
[5]  *Id.* at 7.
[6]  *Id.*
[7]  *Id.*
[8]  Doc. 1 at 7.

the September 10 incident), Smith told him "no."[9]

On September 14, 2020, Burk avers that he spoke with defendant Superintendent Wakefield and told him what had happened on September 10 and 12.[10] Wakefield later returned with Grassmeyer, and when Burk asked to have his legal materials returned, he claims that Grassmeyer told him it was all "thrown away."[11] According to Burk, Wakefield then told him that "since [he] like[s] to write grievance[s]," Wakefield would prevent him from making any additional complaints.[12] Burk claims that Wakefield directed that he be placed in a cell on D Block for two months with "no food shower [sic]" and then he was transferred to SCI Chester.[13] He further alleges that he still has not received his "magazines or legal mail" from SCI Smithfield.[14]

Burk filed suit in July 2021, naming as defendants Wakefield, Cassol, Hann, Smith, and Grassmyer.[15] He appears to assert the following constitutional tort claims: (1) a Fourth Amendment violation regarding the seizure of his property; (2) Eighth Amendment violations for excessive force and deliberate indifference to serious medical needs; and (3) First Amendment violations sounding in retaliation

---

[9]  *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 7-8.
[13] *Id.* at 8.
[14] Doc. 1 at 8.
[15] *See id.* at 1-3.

and denial of access to the courts.[16]  Burk does not delineate which claims are asserted against which Defendants, apparently leaving to the Court and Defendants the task of sifting through his underdeveloped complaint.

Defendants move to dismiss many of Burk's claims against some or all Defendants, assuming that each constitutional tort is targeted at each Defendant.[17] Defendants' Rule 12(b)(6) motion is briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[18]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[19]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[20]

---

[16] *See id.* at 5; Doc. 14 at 2-3.  Burk does not specify what constitutional tort claims he is asserting beyond broadly identifying the Amendments themselves.  *See* Doc. 1 at 5.
[17] *See generally* Docs. 12, 13.
[18] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[19] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[20] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[21]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[22]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[23]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[24]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[25]

Because Burk proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[26]  This is particularly true when the *pro se* litigant, like Burk, is incarcerated.[27]

### III.  DISCUSSION

Defendants point to numerous purported deficiencies in Burk's complaint, which they maintain require dismissal of certain claims with prejudice.  Because

---

[21] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[22] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[23] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[24] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[25] *Iqbal*, 556 U.S. at 681.
[26] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[27] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

Burk does not properly identify his claims or the defendants against which they are asserted, the Court must review the sufficiency of each of his claims in turn.

### A.     Fourth Amendment Claim

Burk appears to assert that the seizure of his legal mail and other written materials violates his Fourth Amendment rights. The Fourth Amendment to the United States Constitution, in pertinent part, protects against "unreasonable searches and seizures."[28] However, in the prison context, it is well settled that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells[.]"[29] Rather, the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.[30]

Burk's Fourth Amendment argument could potentially be construed as claiming that his personal property was wrongfully taken by a state actor, thus implicating a Fourteenth Amendment claim of deprivation of property without due process of law.[31] This constitutional tort, however, has its own significant

---

[28] U.S. CONST. amend IV.
[29] *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (nonprecedential) (holding that seizure of legal materials did not state a cognizable Fourth Amendment claim) (citing *Hudson*, 468 U.S. at 536).
[30] *See Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016) (distinguishing *Hudson*'s holding from Fourth Amendment claims regarding invasive searches of prisoners' bodies).
[31] *See Hudson*, 468 U.S. at 530, 533.

limitations. Most acutely, such a due process claim is unavailable when "adequate state post-deprivation remedies are available."[32]

Burk's complaint is silent as to whether adequate state post-deprivation remedies exist for the confiscation and alleged destruction of his legal mail and other written materials, but the Court notes that state tort law likely provides a remedy for claims like those Burk is asserting.[33] The United States Court of Appeals for the Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for claims like those asserted here, even if the plaintiff disagrees with the results.[34] The Court thus declines to construe Burk's implausible Fourth Amendment claim as a Fourteenth Amendment due process property deprivation claim because, no matter how the claim is styled, dismissal with prejudice follows.

B. **First Amendment Claims**

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the

---

[32] *Id.* at 533.
[33] *See* 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); *see also Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies).
[34] *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).

corrections system."[35]  Burk appears to attempt to raise two different types of First Amendment violations.

### 1. First Amendment - Denial of Access to the Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."[36]  Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement."[37]  To adequately plead an access-to-courts claim that is backward-looking in nature,[38] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[39]  The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy."[40]

---

[35] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).
[36] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).
[37] *Id.* (citing *Lewis*, 518 U.S. at 354-55).
[38] There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).
[39] *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).
[40] *See Christopher*, 536 U.S. at 416-17.

8

It appears that Burk intends to assert a claim of denial of access to the courts, yet that conclusion is impossible to ascertain from his complaint itself. It is only in Burk's brief in opposition to Defendant's motion to dismiss that he explains that the alleged seizure of his legal materials caused him "to miss legal deadlines in Trenton NJ."[41] However, it is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a Rule 12(b)(6) motion.[42]

And even if Burk had included these facts in his pleading, he still has not alleged that the missed legal deadlines resulted in an actual injury (*i.e.*, a lost, nonfrivolous legal claim). Nor has he pled facts showing that he has no other remedy for the purported loss. Consequently, the Court must dismiss this First Amendment claim, but will grant Burk leave to amend in the event that he can plead the requisite facts to state a plausible access-to-courts claim.

### 2. First Amendment - Retaliation

Burk's claim for retaliation stands on firmer footing. To state a First Amendment retaliation claim, a prisoner must allege that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First

---

[41] Doc. 14 at 2.
[42] *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007); *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

Amendment rights, and (3) the inmate's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[43]

Burk alleges that Defendants[44] retaliated against him for filing a grievance against Grassmeyer by, among other things, searching his cell multiple times, assaulting him, confiscating and destroying his legal materials and personal property, placing him in a cell with harsh conditions, and transferring him to another prison. Defendants argue that Burk's complaint lacks the requisite specificity to adequately plead causation. In particular, Defendants claim that Burk has not specified "which grievance or grievances triggered the alleged retaliatory acts, the subject matter of said grievances, or when the grievances were submitted."[45]

Defendants' argument requires too much. At the Rule 12(b)(6) stage, it is sufficient that Burk has alleged that, after filing a grievance against Grassmeyer (which is undisputedly protected conduct), he was subjected to multiple types of adverse actions because of that grievance. The timing and content of the grievance or grievances are issues better left for discovery and, if appropriate, a motion for summary judgment.[46]

---

[43] *Wisniewski*, 857 F.3d at 156 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[44] Again, Burk does not delineate which Defendants allegedly retaliated against him.
[45] Doc. 13 at 5.
[46] *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018) (explaining relatively low threshold for pleading causation as opposed to proving retaliation claim at summary judgment).

The Court does observe, however, that Burk has only pled retaliation against four of the five Defendants: Hann (for allegedly destroying legal mail and hitting Burk in the face with handcuffs on September 10, 2020, in response to Burk's grievance against Grassmeyer); Smith (for allegedly confiscating Burk's legal documents and assaulting Burk on September 12, 2020, in response to Burk's grievance against Grassmeyer); Wakefield (for allegedly ordering Burk to be put in isolation on D Block for two months and transferring Burk to another prison in response to Burk filing grievances); and Grassmeyer (for allegedly directing the retaliatory conduct and refusing to return Burk's legal materials because of Burk's grievance).

Accordingly, Burk's First Amendment retaliation claim can proceed against Hann, Smith, Wakefield, and Grassmeyer.  Burk, however, has not plausibly described any conduct by Cassol that would demonstrate retaliatory animus, causation, or personal involvement in the retaliatory action.  The Court will therefore dismiss the retaliation claim against Cassol but provide leave to amend so that Burk, if he is able, can plead a sufficient factual basis for the retaliation claim against Cassol.

### C.   Eighth Amendment Claims

Burk appears to allege two varieties of Eighth Amendment infringement: excessive force and deliberate indifference to serious medical needs.[47] The Court will briefly discuss the sufficiency of each of these claims.

#### 1.   Excessive Force

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[48] The factors analyzed when making this inquiry include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response."[49]

Burk appears to assert excessive force claims against Hann and Smith. As to Hann, Burk claims Hann hit him in the face with handcuffs for no reason other

---

[47] To the extent that Burk attempts to assert an Eighth Amendment conditions-of-confinement claim, he has not adequately pled facts that would demonstrate unconstitutional conditions, nor who subjected him to those conditions. Burk vaguely asserts, "I was in a cell by myself for 2 months. No food shower [sic]." Doc. 1 at 8. These allegations are not plausible; Burk would likely be seriously injured or dead if he went two months without food. Burk likewise does not allege who inflicted these purported conditions on him. Such nebulous, implausible allegations plainly fail under the pleading requirements of *Twombly* and *Iqbal*.
[48] *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)).
[49] *Id.* (quoting *Smith*, 293 F.3d at 649).

than to send a "message" from Grassmeyer. Burk alleges that Smith spit on him, tightened his handcuffs causing a wrist injury, and stomped on his foot.

Defendants take issue with the amount of force that was allegedly applied, arguing that—at least with regard to Smith—Burk has not sufficiently alleged "unnecessary and wanton infliction of pain that offends contemporary standards of decency."[50] But Burk's allegations obviously meet the pleading threshold for an excessive force claim because he has alleged physical assault for no legitimate penological purpose. Moreover, in an excessive force claim, the focus is the "nature of the force" employed, not the "extent of the injury" sustained.[51] Consequently, Burk's excessive force claims against Hann and Smith may go forward.

### 2.     Deliberate Indifference to Serious Medical Needs

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[52] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly plead "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate

---

[50] Doc. 13 at 15.
[51] *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010); *Brooks v. Kyler*, 204 F.3d 102, 109 (3d Cir. 2000).
[52] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

indifference to that need."[53] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[54] Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[55]

    Burk's medical indifference claim is insufficient. His single allegation is that, on September 12, 2020, he asked Smith for medical care related to his eye (allegedly bleeding from the September 10 incident), which Smith denied. It is questionable whether such abbreviated allegations identify a serious medical need. Even assuming they do, Burk has not alleged that he suffered any harm because of Smith's purported denial of medical attention. Without pleading any harm, Burk cannot state a medical indifference claim.[56] This claim, therefore, will also be dismissed without prejudice.

---

[53] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[54] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[55] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[56] *See Brooks*, 204 F.3d at 105 n.4 (explaining that prisoner's claim could not survive Rule 56 challenge because "he presented no evidence of any harm resulting from a delay in medical treatment") (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *Joh v. Suhey*, 709 F. App'x 729, 731 (3d Cir. 2017) (nonprecedential) (finding that brief delay in treatment did not demonstrate that medical provider disregarded "an excessive risk" to inmate's safety because inmate did not allege that "the delay in treatment led to any serious harm").

## IV. LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[57] Burk's Fourth Amendment claim will be dismissed with prejudice because leave to amend would be futile. As explained above, Burk's allegations cannot make out a Fourth Amendment violation in the prison setting. The Court will grant leave to amend for Burk's First Amendment access-to-courts claim, his Eighth Amendment conditions of confinement claim (if he intended to bring such a claim), and his Eighth Amendment medical indifference claim against Smith. Burk may also, if able, replead his First Amendment retaliation claim to include allegations that would adequately state a retaliation claim against Cassol.

If Burk chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth *all* of Burk's claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Burk must include every claim that he intends to pursue— even those that survived Defendants' motion to dismiss—in the amended complaint. Burk must also name proper defendants, specify the offending actions

---

[57] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

taken by a particular defendant, sign the amended complaint, and indicate the nature of the relief sought. If Burk chooses not to amend his pleadings, his case will proceed on the following claims: (1) First Amendment retaliation against Hann, Smith, Wakefield, and Grassmeyer; and (2) Eighth Amendment excessive force against Hann and Smith.

## V. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion (Doc. 12) to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will also grant leave to amend as to some of Burk's dismissed claims. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge